UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNDERHILL LAND, LLC and
UNDERHILL RE HOLDING,
LLC,

                Plaintiffs,

          -v-                   1:24-CV-1527

TOWN OF CATSKILL, MATTHEW
CARLILE, a Code Enforcement
Officer, TUSHAR SONI, and
NISHTHA DALAL,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

MCLOUGHLIN O'HARA, LLP      DANIEL M. O'HARA, JR., ESQ.
Attorneys for Plaintiffs
250 Park Ave, Floor 7
New York, NY 10177

GUERCIO & GUERCIO, LLP       ADAM I. KLEINBERG, ESQ.
Attorneys for the Town Defendants
77 Conklin St.
Farmingdale, NY 11375

LAW OFFICES OF DAVID E. MOLLON   DAVID E. MOLLON, ESQ.
Attorneys for the Individual Defendants
232 County Route 405
Greenville, NY 12083

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

# I. INTRODUCTION

This action arises out of a dispute over property rights for a parcel of land located in Catskill, New York.  Dkt. No. 1.  On December 16, 2024, plaintiffs Underhill Land, LLC and Underhill Re Holding, LLC, (collectively, "plaintiffs") commenced this action against defendants the Town of Catskill (the "Town"), Matthew Carlile, a Zoning and Building Code Enforcement Officer ("Carlile") (collectively, the "Town defendants"), Tushar Soni ("Soni"), and Nishtha Dalal ("Dalal") (collectively, the "Individual Defendants").  *Id.*

Plaintiffs' twelve-count complaint asserts claims against the Town Defendants for (1) substantive due process violations; (2) procedural due process violations; (3) takings clause violations; (4) "abuse of power and arbitrary governmental conduct[;]" (5) Equal Protection Clause violations; (6) New York State Constitution violations; (7) breach of contract; (8) tortious interference with contractual relations; (9) unjust enrichment; and (10) New York General Municipal Law § 51 violations.  Dkt. No. 1.  Plaintiffs have also brought claims against the Individual Defendants for "intentional interference with contract[;]" and "aiding and abetting violations of 42 U.S.C. § 1983[.]"  *Id.*

On February 18, 2025, the Town defendants moved pursuant to Federal Rule of Civil Procedure ("Rule(s)") 12(b)(6) to dismiss plaintiffs' claims

against them.  Dkt. No. 9.  The individual defendants moved to dismiss pursuant to Rules 12(b)(6) and 12(b)(1) on February 25, 2025.  Dkt. No. 13.

The matter has been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 17, 20–21.

## II.  BACKGROUND

### A.  Acquisition and Development of the Property

Plaintiffs own property (the "Property") in the Town.  Compl. ¶ 1. Plaintiffs purchased the property in August 2022.  *Id.* ¶ 2.  The property consists of four parcels located in an existing subdivision.  *Id.* ¶¶ 1–2. Plaintiffs purchased the property with the intention of developing the property for residential use.  *Id.* ¶¶ 4, 8.  Plaintiffs planned to construct—and later did construct—homes on each of the four parcels.[1]  *Id.* ¶¶ 4, 8, 16.

The Property is located off Old Underhill Road in the Town.  Compl. ¶ 1. Prior to purchasing the Property, plaintiffs made a pre-purchase inquiry with the Town and Carlile as to whether the access road leading to the Property (the "Access Road") would require permit or other renovations in order to develop the property in accordance with the town's zoning and building code ("Code").  *Id.* ¶ 5.  According to plaintiffs, Carlile stated that he did not believe that a permit was necessary and saw "no problem with a *direct drive*

---

[1]  The four parcels are also referred to as "Lots 1, 2, 3, and 4."  Compl. ¶ 13.

*off* of Old Underhill Road."[2]  *Id.* ¶ 6 (emphasis added).  Plaintiffs later purchased the property for an upfront acquisition cost of $275,000 including loan interest and carrying costs.  Compl. ¶ 13.

After the purchase plaintiffs submitted proposed plans to construct single-family homes on each of the four parcels.  Compl. ¶ 8.  Plaintiffs also submitted a plan to "widen and modernize" a portion of the Access Road.  *Id.* ¶ 9.  However the initial plans did not include any proposed improvements to the land beyond the surveyed boundary lines of the Property.  *Id.* ¶ 10. Carlile then reviewed the plans, inspected the Property, including the Access Road.  *Id.* ¶ 11.

In or around November 2022,  plaintiffs obtained the necessary permits[3] and approval from the town to begin developing the Property.  Compl. ¶ 12. Plaintiffs invested an upwards of $1,800,000 into the development of the Property.  *Id.* ¶ 13.

Thereafter plaintiffs began construction on the Property.  Compl. ¶ 14. During the course of construction, the Town monitored the development.  *Id.* ¶ 14.  According to plaintiffs, the Town's code enforcement officers visited the Property—entering and exiting the Property through the Access Road—to

---

[2]  The Court understands this to refer to a road stemming from Old Underhill Road that connects the Property to Old Underhill Road.

[3]  According to plaintiffs, Carlile issued "unconditional building permits."  Compl. ¶ 11.

inspect the sites at least a dozen times.  *Id.* ¶¶ 14, 17.  At no point during construction did the town raise any issues about the condition or size of the Access Road or indicate that the building permits themselves were conditioned on the "status" of the Access Road.  *Id.* ¶15.

Once construction was completed, plaintiffs submitted a request to the Town for certificates of occupancy ("CO(s)") in accordance with the Code. Compl. ¶ 18.  Plaintiffs expected the Town to grant their request for COs based on the Town's prior "approvals." *Id.*  However, the Town denied plaintiffs' request.  *Id.* ¶ 19.

Specifically, in August 2023 after plaintiffs completed construction on lot 2 and weeks before the completion of construction on Lot 1 Carlile issued a formal written denial of the COs for Lots 1 and 2.  Compl. ¶ 20.  The denial raised new concerns with the width and surfacing of the Access Road, stating that the Access Road was "insufficient to accommodate fire safety and emergency response vehicles." *Id.* ¶ 21.  The Town later issued "stop work" orders for the remaining two construction sites: Lots 3 and 4 on November 15, 2023. *Id.* ¶¶ 22, 47.

Plaintiffs believe that the Town and Carlile's steadfast denial of the COs was motivated by improper motivations such as "neighborhood opposition, and political considerations having to do with the neighboring property owner (Claire Zwickel)[.]" Compl. ¶ 27.  Specifically, plaintiffs allege that the Town

"changed its tune" regarding the status of the Access Road when it learned that Zwickel had initiated a lawsuit against plaintiffs, to dispute the correct location of her property line.[4]  *Id.* ¶¶ 35–36.  Plaintiffs believe that the Town "conspired" with Zwickel to "thwart" plaintiffs' ability to develop and sell the Property.  *Id.* ¶ 37.

## B. Article 78 Proceedings

On December 15, 2023, plaintiffs initiated Article 78 proceedings in the New York Supreme Court, for Green County (the "Article 78 court") against the Town and Carlile.  *Underhill Land LLC v. Town of Catskill* Case No. EF2023-931 Dkt. No. 1.  Plaintiffs sought a judgment (1) annulling and rescinding the Town's decision to deny COs for Lots 1 and 2; (2) compelling the Town to grant plaintiffs COs for Lots 1 and 2; (3) annulling and rescinding the Town's decision to issue "stop work" orders for Lots 3 and 4; (4) declaring the Town's decision to deny COs and issue stop-work orders as "invalid and void[;]" and (5) awarding costs and fees.  *Id.*

On February 29, 2024, the parties attended a settlement conference, during which the parties reached an agreement to grant plaintiffs the COs.

---

[4] Plaintiffs, along with the Individual Defendants, have been sued by Zwickel.  *See Zwickel v. Underhill Land LLC* Case No. EF2023-215.  The case was filed in the New York Supreme, Green County. The case is on appeal to the Third Department after county court denied Underhill's motion for partial summary judgment and dismissal. *Zwickel v. Underhill Land LLC*, Dkt. No. 590. According to plaintiffs, as a result of this lawsuit, they remained enjoined from doing any construction to the Access Road.  Compl. ¶ 40.

Compl. ¶ 49; *see also Underhill Land LLC v. Town of Catskill* Case No. EF2023-931 Dkt. No. 33.  However, according to plaintiffs, the Town's attorney added additional terms that required plaintiffs to *inter alia* pay legal fees and sign a general release.  *Id.*  Plaintiffs allege that these terms were not included in the parties' written term sheet signed at the settlement conference.  *Id.*; *see Underhill Land LLC v. Town of Catskill* Case No. EF2023-931 Dkt. No. 37.  Plaintiffs thereafter moved for an Order directing specific performance of the settlement agreement by the Town.  *Underhill Land LLC v. Town of Catskill* Case No. EF2023-931 Dkt. No. 38.  The Town opposed.  *See Underhill Land LLC v. Town of Catskill* Case No. EF2023-931 Dkt. No. 49.  The Article 78 court thereafter denied plaintiffs' motion and the Town was directed to answer plaintiffs' verified petition.  *Id.*  Plaintiffs' verified petition was *denied* by written decision and order on January 29, 2025.  *Underhill Land LLC v. Town of Catskill* Case No. EF2023-931 Dkt. No. 57.

## C. <u>Communications with the Individual Defendants</u>

Plaintiffs further allege that the Town made attempts to provide COs to the buyers of the home located on Lot 1.  *Infra.*  In April 2024, the Town communicated with the owners of Lot 1, the Individual Defendants, to offer them a "path to [COs][.]"  Compl. ¶ 50.  According to plaintiffs, the Town proposed to treat the Access Road as merely a private driveway for Lot 1.  *Id.*

This would effectively cut off access to the remaining parcels, Lots 2, 3, and 4, from Old Underhill Road.  *Id.*

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.  <u>DISCUSSION</u>

There are two pending motions to dismiss before the Court presently. First, the Town Defendants have moved to dismiss each of the claims that plaintiffs have brought against them, counts one through ten, arguing *inter*

*alia* that the doctrines of collateral estoppel and *res judicata* warrant dismissal of plaintiffs' claims that have been adjudicated in the Article 78 proceeding. Dkt. No. 9. Next, the individual defendants—property owners Soni and Dalal—have moved to dismiss the claims that plaintiffs have brought against them, counts eleven and twelve on the merits. Dkt. No. 13. The Court will address each of the motions in turn.

## A. The Town Defendants' Motion to Dismiss

Briefly stated, the Town defendants argue that the Town denied plaintiffs the requested COs because plaintiffs failed to comply with the Town Code requirements. Town Defs. Mem., Dkt. No. 9-10 at 8. Specifically, the access road abutting their property is too narrow to allow fire and emergency vehicle egress. *Id*. The Town defendants argue that Counts I–X of the complaint must be dismissed for both procedural and/or jurisdictional defects and for failure to state a claim. *Id*.

### i. Article 78 Proceeding

First, the Town defendants argue that the doctrines of collateral estoppel and *res judicata* bar plaintiffs from relitigating Counts I–VI because these claims have already been adjudicated in plaintiffs' Article 78 proceeding. Town Defs.' Mem. at 19–21. Plaintiffs argue in opposition that they did not adjudicate the same claims asserted in the complaint at their earlier Article

78 proceeding because the issue before the Article 78 court was far narrower than the issues presented here. Pls.' Opp'n at 8–9.

The doctrines of *res judicata* and collateral estoppel prevent relitigating what has already been decided. *Infra.* Under New York law, "*res judicata*[,] [or claim preclusion,] bars an action if '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *D.B. v. Sullivan*, 2023 WL 2456070, at *5 (N.D.N.Y. Mar. 9, 2023) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). New York employs a "transactional approach" to *res judicata*, meaning that "if claims arise out of the same factual grouping they are deemed to be part of the same cause of action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief." *D.B.*, 2023 WL 2456070, at *5 (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)). Whereas "collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365,

371 (2d Cir. 2023) (quoting *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021)).

Application of claim preclusion is limited, however. As relevant here, the bar to bringing such later claims does not apply "if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *D.B.*, 2023 WL 2456070, at *5 (citing *Davidson*, 792 F.2d at 278).[5] As the Second Circuit has explained, "this limitation stems from the recognition that, where formal barriers to asserting a claim existed in the first forum it would be unfair to preclude the plaintiff from a second action in which he can present those phases of the claim which he was disabled from presenting in the first." *Whitfield v. N.Y.C.*, 96 F.4th 504, 523 (2d Cir. 2024) (cleaned up). The Second Circuit has expressly held that in the absence of a "hybrid" Article 78 proceeding, claim preclusion will not apply. *Id*. at 527.

The Second Circuit did not address, however, the doctrine of *collateral estoppel*, or issue preclusion. *Id*. at 523 n.16 ("We do not address issue preclusion here[.]"). Therefore, it remains an open question whether an *issue* decided during an Article 78 proceeding may have issue preclusive effect in a later lawsuit.

---

[5] The Second Circuit has defined so-called "hybrid" Article 78 proceedings as ones in which which the plaintiffs also seek "relief that is not available under Article 78[,]" or where "the state court treated the proceeding as a hybrid one." *Whitfield*, 96 F.4th at 527.

Courts in this Circuit have dismissed a plaintiff's claims as barred by collateral estoppel where core issues were resolved in the Article 78 proceeding. In *Golubovych v. Saks 5th Avenue, Inc.*, the court held that collateral estoppel applied because the plaintiff had raised the same factual allegations in their Article 78 proceeding as they had in their later federal lawsuit. 2024 WL 4135251, at *7–9 (S.D.N.Y. Sept. 10, 2024). The court distinguished the case from *Whitfield* on the basis that the court was applying collateral estoppel*, not res judicata. Id*. at *8 n.6.

In a recent decision by U.S. District Judge Brenda K. Sannes in *Bristol v. Town of Camden*, 2024 WL 2722383, at *5 (N.D.N.Y. May 28, 2024), the court took the same approach. In *Bristol*, Judge Sannes held that the plaintiffs' prior Article 78 proceeding and subsequent decision denying their petition foreclosed, under the doctrine of collateral estoppel, the plaintiffs' federal equal protection claims. 2024 WL 2722383, at *5. Judge Sannes determined that the plaintiffs had a "full and fair opportunity to litigate their claims regarding the Town's zoning decision in the Article 78 proceeding." *Id*. at *4. First, Judge Sannes reasoned that "plaintiffs' Article 78 petition presented facts at issue very similar to allegations in [the federal] action." *Id*. at *4. Judge Sannes then concluded that the Article 78 court decided issues that were decisive to plaintiffs' class-of-one and selective enforcement Equal Protection Clause claims raised in their federal lawsuit. *Id*. at *4–6.

Specifically, Judge Sannes found that because the town had acted *rationally*, it had decided the core issue of plaintiffs' class-of-one Equal Protection Clause claim: whether the town acted without any rational basis. *Bristol*, 2024 WL 2722383, at *5. Next, Judge Sannes found the same was true for plaintiffs' selective enforcement claim. *Id*. at *5–6. Judge Sannes concluded that the Article 78 court's finding that the town had a "legal basis for [its] zoning decisions . . . [and] did not merely succumb to community pressure" unrelated to legitimate governmental objectives, implicated the rejection of plaintiffs' selective enforcement claim. *Id*. at *6. That is because, "if the [town's] motivation . . . is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to get someone for reasons wholly unrelated to any legitimate state objective." *Id*. at *5 (quoting *Bizzaro v. Miranda*, 394 F.4th 82, 87 (2d Cir. 2005)). Thus, despite not explicitly raising an equal protection claim during the Article 78 proceeding, plaintiffs were barred from relitigating the same *issues* addressed and adjudicated by the Article 78 court.

Upon review, the Court is satisfied that plaintiffs have had a full and fair opportunity to litigate Counts I–VI in the Article 78 proceeding.[6]  First, like the plaintiffs in *Bristol*, plaintiffs' verified petition sets forth allegations that are very similar to the allegations pertaining to Counts I–VI in the complaint.  *Infra*.  In the verified petition, plaintiffs allege, *inter alia*, that:

> The Town's 'justification' for its refusal to issue the COs is a thinly veiled pretextual excuse to single out Petitioners and frustrate their business.  On information and belief the town has conspired with the neighboring property owner to try and thwart petitioners and intentionally interfere with their lawful ability to develop and sell these properties.

Verified Pet. at 4.[7]  Plaintiffs go on to detail their exchanges with the Town including the Town and Carlile's "determinations" that the access road

---

[6]  The Court notes that plaintiffs received their written decision in the prior Article 78 proceeding on January 29, 2025.  *Supra*.  However, plaintiffs' submissions were received and considered by the Article 78 court on or before October 2, 2024.  Dkt. No. 9-7.  Therefore, as more fully discussed below, plaintiffs' issues were fully litigated according to New York law.  *See Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006) (citation omitted) (holding that, "[f]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding").  Further, plaintiffs do not raise this fact as an argument against applying collateral estoppel in their opposition papers.

[7]  In their complaint, plaintiffs allege that "[t]he Town's 'justification' for its refusal to issue the COs was and remains a thinly veiled pretextual excuse to single out Plaintiffs, frustrate their business, and deprive [p]laintiffs of their property rights[,]" and that "[p]laintiffs allege that the Town conspired with the neighboring property owner, with whom certain Town personnel have ties, to try to thwart [p]laintiffs, and intentionally interfere with their lawful ability to develop and sell these properties."  Compl. ¶¶ 23, 37.

complied with the Code followed by the Town's ultimate denial.[8]  *Id.* at 8–16.

Plaintiffs also include the same allegations as they do in their complaint that

the Town treated plaintiffs differently than other property owners whose

properties also located on access roads similar to the Access Road at issue

herein.  *Id.* at 15–16.[9]  Plaintiffs further alleged, as they have in the

complaint, that they believed the Town conspired with Zwickel in making its

determinations.  *Id* at 18–19.[10]

Next, the Article 78 court decided core issues of plaintiffs' claims for

substantive due process violations (Count I); procedural due process

violations (Count II); takings clause violations (Count III); "abuse of power

and arbitrary governmental conduct[;] (Count IV)" Equal Protection Clause

---

[8]  In their complaint, plaintiffs allege that "[p]rior to purchase, Plaintiffs inquired with the Town and Mr. Carlile as to whether the access road needed a permit or otherwise required renovation as a condition to develop the properties[,]" and that "[a]t the time if pre-purchase inquiry, the Town's Code Enforcement Office said they believe, 'no permit [was] needed' and they 'see no problem with a direct drive off of [Old Underhill Road].'" Compl. ¶¶ 5–6 (alteration in original).

[9]  In their complaint, plaintiffs allege that "the Town regularly issued COs for other comparable properties in the area whose access roads are narrower and in worse condition than Old Underhill Road[,]" and that the "Old Quarry Road" development in the Town of Catskill is one such comparable project where the physical characteristics of the access road to that project were considerably narrower and more challenging for large vehicles to pass through, yet the Old Quarry Road project was granted certificate(s) of occupancy without issue, delay, or resistance from the Town."  Compl. ¶¶ 24–25.

[10]  In their complaint, plaintiffs allege that "[i]t was only during the state court litigation between the Plaintiffs herein and their neighboring owner, Claire Zwickel, and distinctly after the Plaintiffs accused the Town of disparate treatment, did the Town attorney attempt to cover the Town's tracks by advising the Code Enforcement Office to impose additional requirements on the Old Quarry Road owners, which, upon information and belief, had been approved twenty some years prior[,]" and that "[t]he Town and specifically Defendant Carlile's actions in denying the certificate(s) of occupancy to the Plaintiffs was motivated by improper motives and arbitrary conduct (i.e. neighborhood opposition, and political considerations having to do with the neighboring property owner, Claire Zwickel) and were inconsistent with the Town's established practices and procedures."  Compl. ¶¶ 26–27.

violations (Count V); New York State Constitution violations (Count VI).
*Infra*.  In its decision and order denying plaintiffs' verified petition, the
Article 78 court concluded that the Town defendants' "determination to
refuse to issue certificates of occupancy to and issue Stop Work orders had a
<u>rational basis</u>."  Article 78 Decision & Order, Dkt. No. 9-7 at 10 (emphasis
added).  This is because, the Article 78 concluded, the Town defendants
issued the initial permits upon review of *plaintiffs'* own plans—including a
plan for the Access Road "depicting a 12' wide travel surface with block/
boulder wall and guardrails at the southernmost end of Old Underhill Road."
*Id*. at 11.  Carlile's correspondence which predated the issuance of the initial
permits stated that "while a 15' base should be aimed for, a 12' travel surface
was the 'absolute least' that would be required for proper access."  *Id*. at 11.
The Article 78 court further noted that "[t]he record shows that Petitioners
have been unable to achieve even the minimum 12' travel surface width in
that area, let alone to install the gravity block and/or boulder wall and
guardrails East of that edge."  *Id*. at 10.  Thus, the Article 78 court
determined that the Town defendants had not changed their tune, as
plaintiffs allege here, but maintained the same building and access road
requirements applied throughout the permitting and construction processes.
*See id*.

For the reasons stated below, the Article 78 court's determination that the Town defendants' actions had a rational basis necessarily forecloses plaintiffs' federal claims for substantive due process violations (Count I), procedural due process violations (Count II); takings clause violations (Count III), "abuse of power and arbitrary governmental conduct[,] (Count IV), Equal Protection Clause violations (Count V), and New York State Constitution violations (Count VI) under the doctrine of collateral estoppel.

1. <u>Count I</u>

Count I sets forth a claim for violations of plaintiffs' substantive due process rights.  A plaintiff's "[s]ubstantive due process rights are violated only by conduct 'so outrageously arbitrary as to constitute a gross abuse of governmental authority.'"  *Arizona Hudson Valley LLC v. Allen*, 2023 WL 3936640, at *6 (N.D.N.Y. June 9, 2023) (quotation omitted).  As discussed, the Article 78 court determined that the Town defendants' actions had a rational basis.  *Supra*.

Therefore, the Article 78 court decided a core issue necessary to resolve plaintiffs' substantive due process claim.  Accordingly, Count I is barred by collateral estoppel and will be dismissed.

2. <u>Count II</u>

Count II sets forth a claim for violations of plaintiffs' procedural due process rights. To survive a motion to dismiss on a procedural due process

claim, the "plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Allen*, 2023 WL 3936640, at *5 (quotation omitted). As relevant here, "[i]n the land-use context, courts in this Circuit have repeatedly held that the availability of an Article 78 proceeding in state court is a post-deprivation remedy that satisfies procedural due process." *Id*.

Therefore, adjudication of the Town defendants' decisions to deny the COs and issue the "stop work" orders necessarily decided the heart of plaintiffs' procedural due process claim: it provided plaintiffs with process and determined that the Town defendants acted rationally. Accordingly, Count II is barred by collateral estoppel and will be dismissed.

3. <u>Count III</u>

Count III sets forth a takings clause violation. "A property owner states a claim for a violation of the Takings Clause when the plaintiff adequately alleges that the government took the plaintiff's property for public use without paying for it." *Polizzi v. Cnty. of Schoharie*, 720 F. Supp. 3d 141, 150 (N.D.N.Y. 2024). As relevant here, "[a] takings claim requires a property interest." *Morris Motel, LLC v. DeChance*, 2023 WL 2682937, at *5 (E.D.N.Y.), *appeal withdrawn,* 2023 WL 4476155 (2d Cir. May 30, 2023) (citation omitted). As discussed, the Article 78 court determined that plaintiffs' non-compliance with the Code was the reason for the Town

defendants' denial of their COs.  *Supra.*  That is, plaintiffs did not have a cognizable property interest in the COs because they had not complied with the requirements to obtain them.

Therefore, the issue of whether plaintiffs demonstrated a property interest was adjudicated by the Article 78 court.  Accordingly, Count III is barred by collateral estoppel and will be dismissed.

4. <u>Count IV</u>

Count IV sets forth a claim for "abuse of power and arbitrary governmental conduct" against the Town defendants.  To the extent that this claim sets forth a cognizable claim, it too will be dismissed.  As discussed, the Article 78 court determined that the Town defendants did not act arbitrarily but that the Town defendants' decisions had a rational basis.  Accordingly, Count IV is barred by collateral estoppel and will be dismissed.

5. <u>Count V</u>

Count V sets forth an Equal Protection Clause violation.  Broadly construed, the complaint raises both a selective enforcement and class-of-one theory.  As noted in *Bristol*, "to prevail on [a] class-of-one claim [p]laintiffs must demonstrate that they were intentionally treated differently from other similarly-situated individuals without any rational basis."  *Bristol*, 2024 WL 2722383, at *5 (citation omitted).  By contrast, "[t]o establish their selective enforcement equal protection claim [p]laintiffs must show that: (1) they,

'compared with other similarly situated,' were 'selectively treated,' and that 'the selective treatment was motivated by an intention to discriminate on the basis of . . . a malicious or bad faith intent to injure' them". *Id.* (quoting *Hu v. N.Y.C.*, 927 F.3d 81, 91 (2d Cir. 2019)).

As discussed, the Article 78 court determined that that Town defendants acted *rationally* and that their decisions were based on plaintiffs' non-compliance with the Code.  Therefore, the Article 78 court adjudicated issues that are core to both plaintiffs' selective enforcement and class-of-one equal protection theories.  *See Bristol*, 2024 WL 2722383, at *5 (quotation omitted) ("If the motivation . . . is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to get someone for reasons wholly unrelated to any legitimate state objective.").  Accordingly, Count V is barred by collateral estoppel and will be dismissed.

6. <u>Count VI</u>

Plaintiffs also bring claims for violations of Article I § 6 (Due Process) and Article I § 11 (Equal Protection) of the New York State Constitution.  For the reasons set forth *supra*, Count VI is also barred by collateral estoppel. *See DoorDash, Inc. v. N.Y.C.*, 692 F. Supp. 3d 268, 299 n.5 (S.D.N.Y. 2023) (quoting *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019)) ("'New York courts have interpreted the due-process guarantees of the New York Constitution and the United States Constitution to be coextensive . . . .'"); *see*

*also LeTray v. City of Watertown*, 718 F. Supp. 3d 192, 202 (N.D.N.Y. 2024) (collecting cases) ("The Court analyzes Plaintiff's federal and state equal protection claims identically because New York's Equal Protection Clause is no broader in coverage than the Federal provision.").  Accordingly, Count VI is barred by collateral estoppel and will be dismissed.

### ii.  Notice of Claim

The Town defendants also argue that plaintiffs' state law claims for violations of the New York State Constitution (Count VI), breach of contract (Count VII), unjust enrichment (Count IX), and violations of the New York General Municipal Law § 51 (Count X) must be dismissed pursuant to N.Y. Gen. Municipal Law § 50-e(2) and N.Y. Town Law § 65(3) because they were not included in plaintiffs' Notice Of Claim.  Town Defs.' Mem. at 22–23.  However, for the reasons discussed *infra*, the Court need not reach this argument in order to dispose of the Town defendants' motion.

### B.  The Individual Defendants' Motion to Dismiss

The Individual defendants have also moved to dismiss Counts XI and XIII of the complaint.  Ind. Defs.' Mem., Dkt. No. 13-1.  Count XI asserts a claim for intentional interference with contract.[11]  Count XII asserts a claim for

---

[11]  The individual defendants also move to dismiss Count XII on the merits for both a failure to state a claim and for lack of supplemental jurisdiction in light of plaintiffs' failure to advance any federal claims.  Ind. Defs.' Mem. at 8–9.  The Court addresses the issue of supplemental jurisdiction in Part C of this Decision & Order.

"aiding and abetting violations of 42 U.S.C. § 1983." The individual

defendants argue that plaintiffs do not allege that Soni and Dalal are state

actors, committed a single act "under the color of state law;" or otherwise

qualify for an exception to the state action requirement of § 1983. *Id.* at 6–8.

As an initial matter, § 1983 "merely provides a mechanism for enforcing

individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by

the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536

U.S. 273, 285 (2002). Even broadly construing the complaint to assert a

claim against the Individual defendants for "aiding and abetting" violations

of plaintiffs' rights secured under the Due Process Clause, Equal Protection

Clause, or Takings Clause, this claim would still fail.

This is because, as the Individual defendants point out, plaintiffs have

failed to include the most important ingredient for a § 1983 claim: state

action. *See Reinhardt v. City of Buffalo*, 2025 WL 2419571, at *8 (W.D.N.Y.

Aug. 21, 2025) (quoting *Barrett v. Harwood*, 189 F.3d 297, 301 (2d Cir. 1999))

("As the Second Circuit has observed: '[I]n a § 1983 action brought against a

state official, 'the statutory requirement of action 'under color of state law'

and the 'state action' requirement of the Fourteenth Amendment are

identical.'"). As relevant here, "where the defendant is a private entity, a

plaintiff must demonstrate that the alleged infringement of federal rights

was 'fairly attributable to the state.'" *Basile v. Levittown United Tchrs.*, 17 F.

Supp. 3d 195, 203 (E.D.N.Y. 2014) (quotation omitted). Conduct is only fairly attributable to the state where "a close nexus exists between the state and the challenged action[.]" *Id.* (cleaned up). A nexus exists between a private entity and a state when:

> a private entity and the state when the state exercises coercive power, is entwined in the management or control of a private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies.

*Id.* (citation omitted).

Upon review, the complaint is scant of allegations sufficient to clear the state action hurdle imposed by § 1983. Therefore, plaintiffs have failed to state a claim for "aiding and abetting violations of 42 U.S.C. § 1983" against the Individual defendants. Accordingly, Count XII will be dismissed.

The individual defendants also move to dismiss Count XII on the merits for both a failure to state a claim and for lack of supplemental jurisdiction in light of plaintiffs' failure to advance any federal claims. The Court addresses the issue of supplemental jurisdiction below.

## C. **State-Law Claims**

As discussed *supra*, plaintiffs' federal claims will be dismissed. The only remaining claims are for breach of contract (Count VII); tortious interference

with contractual relations (Count VIII); unjust enrichment (Count IX); New York General Municipal Law § 51 violations (Count X); and "intentional interference with contract" (Count XI). Thus, the remaining claims are grounded in state law.

The parties are not diverse. *See* Compl. ¶¶ 52–61. Thus, the only basis for jurisdiction over the state-law claims is supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). The Court has dismissed all of the claims over which it has original jurisdiction. *Supra.* Accordingly, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). Judicial economy, convenience, fairness, and comity all weigh in favor of declining jurisdiction. Accordingly, Counts VII–XI will be dismissed.

## V.  <u>CONCLUSION</u>

In sum, plaintiffs have already had the opportunity to litigate the majority of their federal claims in the Article 78 proceeding brought against the Town defendants. Plaintiffs' remaining federal claim, styled as "aiding and abetting violations of 42 U.S.C. § 1983" asserted against the Individual defendants will be dismissed for failure to plausibly allege that the Individual defendants were acting under the color of law, or otherwise allege the existence of state action. Accordingly, in the absence of any remaining federal claims, or diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

Therefore, it is

ORDERED that

1. The Town defendants' motion to dismiss (Dkt. No. 9) is GRANTED;

2. The Individual defendants' motion to dismiss (Dkt. No. 13) is

   GRANTED; and

3. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motion, enter

a judgment accordingly, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  October 1, 2025
        Utica, New York.